UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ALFRED ROGERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:05CV218 TIA |
| ) | |
| JO ANNE B. BARNHART, ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court under 42 U.S.C. § 405(g) for judicial review of the denial of Plaintiff's application for Disability Insurance Benefits under Title II of the Social Security Act. The parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c).

**Procedural History**

On November 28, 2003, Plaintiff filed applications for Disability Insurance Benefits (DIB), alleging disability beginning August 1, 2003. (Tr. 69-71) The application was denied on January 13, 2004. (Tr.37-41) On April 29, 2004, Plaintiff testified at a five-minute hearing before an Administrative Law Judge (ALJ). (Tr. 316-323) In a decision dated August 5, 2004, the ALJ determined that Plaintiff was not under a disability as defined in the Social Security Act at any time through the date of the decision and thus was not entitled to a Period of Disability or Disability Insurance Benefits. (Tr. 15-22) On December 29, 2004, the Appeals Council denied plaintiff's request for review. (Tr. 5-8) Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## Evidence Before the ALJ

At his hearing before the ALJ, Plaintiff was represented by counsel. Plaintiff briefly testified upon questioning by the ALJ. At the time of the hearing, Plaintiff lived with his fiancee'. Plaintiff had previously been married. He testified to having minor children that lived with their mother, who was not his previous wife. Plaintiff was 58-years-old and weighed 165 pounds. He had received his GED. (Tr. 318-319)

Plaintiff testified that he last worked for the St. Louis County highway department as a truck driver. His duties included driving the truck "and other things." He testified that he had not worked since August 1, 2003, the date he was fired. Plaintiff stated that his employer gave a lot of reasons for the firing and that he petitioned the decision through the union. (Tr. 320)

Plaintiff further testified that he could no longer work due to degenerative disc disease. Plaintiff did not have back surgery, and he went to the VA hospital for treatment every three months. He stated that the doctors gave him medication and also treated his diabetes. Plaintiff reported taking glyburide instead of insulin. He took his blood sugar count daily, which had been normal over the past six months. Plaintiff also testified that he had high blood pressure. (Tr. 320-321)

At this point, the ALJ asked Plaintiff's attorney if he had recent medical records that would justify that Plaintiff could not work. The attorney answered that he had VA Hospital notes to submit. In response, the ALJ requested that the attorney submit a brief with dates and references to the exhibits, which would save his lawyers a lot of time. The ALJ then took the case under advisement, awaiting the brief from Plaintiff's attorney. (Tr. 321-322)

In his brief, Plaintiff's attorney discussed recent notes from the VA Hospital, as well as Plaintiff's inability to perform his past work as a Maintenance Worker. According to the brief,

2

Plaintiff's past position required medium exertion, which Plaintiff was unable to perform due to an inability to stand, bend, or lift over ten pounds. This inability was the reason Plaintiff was fired from his job. (Tr. 72-74, 314)

According to one questionnaire contained in the record, Plaintiff was unable to perform most household activities. (Tr. 88) In his Pain Questionnaire, Plaintiff stated that he was unable to do much of anything over the past 2 months due to pain. He took Tylenol #3 and underwent physical therapy. The pain radiated down his right leg and to the left side in his lumbar area. (Tr. 91)

Plaintiff's Work History Report indicated that he previously worked as a spray painter and maintenance worker/driver. These jobs required walking, standing, climbing, stooping, kneeling, crouching, and handling. Plaintiff lifted between 20 and 150 pounds; however he most often lifted 50 pounds. (Tr. 92-97)

Plaintiff's Disability Report revealed that he had worked after the date his conditions first bothered him. However, his conditions caused him to work fewer hours and take family medical leave. In this report, Plaintiff stated that his job as a spray painter required lifting between 5 and 10 pounds. With regard to his medical records, Plaintiff reported that the physicians treated his conditions with medication, which consisted of Acetaminophen, Celebrex, Codeine, Glyburide, and Lisinopril on the date of the report. (Tr. 98-108)

### **Medical Evidence**

On January 11, 2002, Dr. James E. Walentynowicz evaluated Plaintiff for complaints of wrist and low back pain. Plaintiff reported that he was injured the prior day when he pulled on a tree limb, slipped, and fell down. Plaintiff also reported a 20 year history of back pain. Dr. Walentynowicz noted that Plaintiff was ambulatory with no apparent limp or list. Plaintiff refused to flex or extend

3

to allow the doctor to check his range of motion.  He had no palpable spasm but complained of tenderness along the paralumbar musculature.  Dr. Walentynowicz noted that x-rays were unnecessary.  He diagnosed mild right wrist sprain with early underlying degenerative joint disease and lumbar strain.  Although Dr. Walentynowicz attempted to discuss his findings with Plaintiff, Plaintiff insisted on an x-ray of his lumbar spine.  Dr. Walentynowicz suggested that Plaintiff receive treatment elsewhere.  He also limited Plaintiff's work to light duty with no heavy lifting over 10 pounds.  In addition, Plaintiff should not repetitively push, pull or twist with the right upper extremity.  Dr. Walentynowicz recommended that Plaintiff take Aleve and Flexeril.  (Tr. 221-222)

A letter dated August 26, 2002 from Michael D. Weiss, D.P.M., indicated that Plaintiff had a three-year history of Type II Diabetes.  Plaintiff's vascular exams were normal.  (Tr. 214)

On October 21, 2002, Plaintiff underwent an MRI of his lumbar spine, which showed moderate degenerative facet changes, bilaterally.  (Tr. 49-50) On November 7, 2002, Dr. David L. Wilkinson examined Plaintiff at the request of Plaintiff's treating physician, Dr. Susan Conger.  Dr. Wilkinson reviewed the MRI and found desiccated disc at the L4-5 and L5-S1 levels.  He was uncertain whether there was any real sciatica or isolated disc herniation.  Dr. Wilkinson gave Plaintiff a disability slip limiting him to lifting only 20 pounds and sitting for only an hour at a time.  Dr. Wilkinson noted that Plaintiff's age had a lot to do with his findings and symptoms.  Dr. Wilkinson opined that Plaintiff's primary problem was degenerative disc disease and not disc herniation.  (Tr. 142-143) During a telephone call on December 23, 2002, Plaintiff called Dr. Wilkinson a "quack," at which time Dr. Wilkinson hung up.  Dr. Wilkinson informed Dr. Conger that he did not wish to see Plaintiff again.  (Tr. 140)

Dr. Kong-Woo Peter Yoon examined Plaintiff on January 20, 2003 for complaints of ongoing

lower back pain. Plaintiff reported that the pain did not radiate but mostly stayed in his back. He attributed the pain to an injury on the job that occurred one year prior. Dr. Yoon noted no neurological deficits. While the MRI showed some degenerative joint disease, there was no significant nerve root impingement. He diagnosed degenerative changes and recommended that Plaintiff continue with conservative management, including a pain management service. (Tr. 148)

Progress notes from the John Cochran VA Medical Center from March through October, 2003 indicate complaints of chronic back pain. (Tr. 166-188) On March 10, 2003, the physician noted tenderness in the LS spine area on palpation, mild muscle tenderness, and decreased range of motion. (Tr. 186-187 ) On September 18, 2003, Plaintiff reported chronic pain since 1992 that had become worse over the past 6 months. He assessed his pain as 8/10. (Tr. 184-185) On October 29, 2003, Plaintiff reported taking Darvocet and Trazodone for back pain. (Tr. 183)

On February 4, 2004, Plaintiff rated his pain as 9/10. The physician noted that Plaintiff's self-report of pain corresponded with his non-verbal pain behaviors. (Tr. 308) On August 10, 2004, the VA Regional Office denied Plaintiff's application for Vocational Rehabilitation and Employment services because Plaintiff's disabilities made it unreasonable to expect Plaintiff could use the program to gain and keep competitive employment. The decision was based on Plaintiff's interview as well as medical, educational, and vocational histories. (Tr. 312-313)

**The ALJ's Determination**

In a decision dated August 5, 2004, the ALJ found that Plaintiff met the disability insured status requirements of the Act on November 28, 2003, the date he stated he became unable to work,[1]

---

[1] Plaintiff's Application for Disability Insurance Benefits filed on November 28, 2003 cites August 1, 2003 as the date he became unable to work. (Tr. 69)

5

and continued to meet them through at least the date of the decision. He had not engaged in substantial gainful activity since August 1, 2003. The ALJ noted that the medical evidence established that Plaintiff had degenerative disc disease of the lumbar spine, diabetes mellitus, and hypertension, but he did not have an impairment or combination thereof listed in or medically equal to one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. The ALJ further found that Plaintiff's allegations of symptoms and limitations precluding work were not consistent with the evidence, persuasive, or credible. (Tr. 21)

The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform the physical exertional and nonexertional requirements of work except for lifting or carrying more than 50 pounds or frequently lifting or carrying more than 25 pounds. He further found that Plaintiff had no nonexertional limitations. In addition, the ALJ determined that Plaintiff had the RFC to perform the full range of medium work, which included his past relevant work as a maintenance truck driver as generally performed in the national economy. The ALJ also found that Plaintiff's past relevant work as a spray painter, as he performed it, involved less than medium exertion. He determined that Plaintiff had no symptoms or limitations preventing him from performing his past relevant work as a maintenance truck driver or spray painter. Thus, he concluded that Plaintiff was not under a disability at any time through the date of the decision. (Tr. 21-22)

**Legal Standards**

A claimant for social security disability benefits must demonstrate that he or she suffers from a physical or mental disability. 42 U.S.C. § 423(a)(1). The Social Security Act defines disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

6

to last for a continuous period not less than 12 months." 20 C.F.R. § 404.1505(a).

To determine whether a claimant is disabled, the Commissioner engages in a five step evaluation process. See 20 C.F.R. § 404.1520(b)-(f). Those steps require a claimant to show: (1) that plaintiff is not engaged in substantial gainful activity; (2) that he has a severe impairment or combination of impairments which significantly limits his physical or mental ability to do basic work activities; or (3) he has an impairment which meets or exceeds one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1; (4) he is unable to return to his past relevant work; and (5) his impairments prevent him from doing any other work. Id.

The Court must affirm the decision of the ALJ if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence 'is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion.'" Cruse v. Chater, 85 F. 3d 1320, 1323 (8th Cir. 1996) (quoting Oberst v. Shalala, 2 F.3d 249, 250 (8th Cir. 1993)). The Court does not re-weigh the evidence or review the record de novo. Id. at 1328 (citing Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992)). Instead, even if it is possible to draw two different conclusions from the evidence, the Court must affirm the Commissioner's decision if it is supported by substantial evidence. Id. at 1320; Clark v. Chater, 75 F.3d 414, 416-17 (8th Cir. 1996).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court must review the administrative record as a whole and consider: (1) the credibility findings made by the ALJ; (2) the plaintiff's vocational factors; (3) the medical evidence from treating and consulting physicians; (4) the plaintiff's subjective complaints regarding exertional and non-exertional activities and impairments; (5) any corroboration by third parties of the plaintiff's impairments; and (6) the testimony of vocational experts when required which is based upon a proper hypothetical

7

question that sets forth the plaintiff's impairment(s). Stewart v. Secretary of Health & Human Servs., 957 F.2d 581, 585-586 (8th Cir. 1992); Brand v. Secretary of Health Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

The ALJ may discount plaintiff's subjective complaints if they are inconsistent with the evidence as a whole, but the law requires the ALJ to make express credibility determinations and set forth the inconsistencies in the record. Marciniak v. Shalala, 49 F.3d 1350, 1354 (8th Cir. 1995). It is not enough that the record contain inconsistencies; the ALJ must specifically demonstrate that he or she considered all the evidence. Id. at 1354; Ricketts v. Secretary of Health & Human Servs., 902 F.2d 661, 664 (8th Cir. 1990).

When a plaintiff claims that the ALJ failed to properly consider subjective complaints, the duty of the Court is to ascertain whether the ALJ considered all of the evidence relevant to plaintiff's complaints under the Polaski[2] standards and whether the evidence so contradicts plaintiff's subjective complaints that the ALJ could discount his testimony as not credible. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). If inconsistencies in the record and a lack of supporting medical evidence support the ALJ's decision, the Court will not reverse the decision simply because some evidence may support the opposite conclusion. Marciniak 49 F.3d at 1354.

## Discussion

Plaintiff alleges that the ALJ's decision is not supported by substantial evidence because he failed to properly develop the record during the hearing. The Defendant, on the other hand, asserts

---

[2]The Polaski factors include: (1) the objective medical evidence; (2) the subjective evidence of pain; (3) any precipitating or aggravating factors; (4) the claimant's daily activities; (5) the effects of any medication; and (6) the claimant's functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).

8

that substantial evidence supports the ALJ's credibility and RFC determinations.

The undersigned finds that the ALJ failed to properly develop the record in order to assess Plaintiff's credibility and RFC under Eighth Circuit law, and therefore, the case should be remanded for further proceedings. While the Defendant argues that the ALJ properly discredited the Plaintiff based on inconsistencies in the record, Defendant acknowledges that these findings are based solely on the written record and not Plaintiff's testimony during the hearing. Indeed, Defendant's argument is an almost-verbatim recitation of the Appeals Council's opinion and is void of any support from case law or Social Security rules and regulations. Defendant asserts that Plaintiff and counsel had the opportunity to present Plaintiff's case.

The Eighth Circuit Court of Appeals has held that "social security hearings are non-adversarial. . . . Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case. . . . The ALJ's duty extends even to cases . . . where an attorney represented the claimant at the administrative hearing." Snead v. Barnhart, 360 F.3d 834, 838 (8th Cir. 2004) (citations omitted); see also Smith v. Barnhart, 435 F.3d 926, 930 (8th Cir. 2006) ("[a] social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) (citation omitted) ("Because the social security disability hearing is non-adversarial, . . . , the ALJ's duty to develop the record exists independent of the claimant's burden in the case."). Further, "[t]he ALJ possesses no interest in denying benefits and must act neutrally in developing the record." Snead, 360 F.3d at 838 (citation omitted).

Here, the ALJ, not Plaintiff's attorney, had the duty to conduct the hearing such that he fully developed the record. While the written record contained some sparse information regarding

9

Plaintiff's daily activities, his medications, and precipitating factors, the ALJ did not elicit any testimony which would clarify or further explain these written questionnaires. See, e.g., Tr. 88 (checklist of daily activities Plaintiff could/could not perform).

Further, in discrediting Plaintiff, the ALJ relied heavily on the lack of medical evidence supporting Plaintiff's allegations. However, he failed to sufficiently discuss the other Polaski factors such as daily activities, effects of medications, or precipitating factors to properly discount Plaintiff's subjective complaints of pain. The undersigned acknowledges that the ALJ is not required to explicitly discuss each Polaski factor. Id. (citation omitted). "It is sufficient if he acknowledges and **considers** those factors before discounting a claimant's subjective complaints." Id. (emphasis added) (citation omitted).

In the instant case, the ALJ cited the social security regulations, rulings, and the Polaski factors in his opinion. However, in his decision, the ALJ discussed primarily the medical evidence and Plaintiff's work history. The ALJ stated that he did consider his observations of Plaintiff during the 5 minute hearing in discrediting the Plaintiff. He observed that Plaintiff had a normal appearance and demeanor and did not appear to be in any distress. (Tr. 17) The ALJ's personal observation of a plaintiff's demeanor during the hearing is a proper basis for making a credibility determination. Johnson v. Apfel, 240 F.3d 1145, 1147-1148 (8th Cir. 2001). However, in Johnson, the ALJ observed the plaintiff over the course of two hours. Id. Here, the brief 5 minute hearing would be insufficient for anyone to form such an opinion.

Further, with regard to the other Polaski factors, Defendant fails to demonstrate that the ALJ considered, let alone expressly discredited, Plaintiff's allegations of disabling pain. Polaski, 739 F.2d at 791-792. Therefore, substantial evidence does not support the ALJ's determination, and this case

10

should be remanded to the ALJ for further analysis. See Snead v. Barnhart, 360 F.3d 834, 838 (8th Cir. 2004) (remanding for further proceedings where ALJ failed to develop the record fairly and fully).

Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner denying social security benefits is **REVERSED** and this case is **REMANDED** to the Commissioner for further proceedings consistent with this Memorandum and Order. A Judgment of Remand shall accompany this Order.

/s/ Terry I. Adelman
UNITED STATES MAGISTRATE JUDGE

Dated this 13th day of March, 2006.